IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CR-00065-F-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| EZEKIEL DONJA GARDNER, | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Ezekiel Donja Gardner's Motion to Suppress Search of Vehicle and Purported Statements [DE-29]. The undersigned conducted a suppression hearing on August 1, 2013. At the hearing, the Government was represented by Special Assistant United States Attorney William Glenn Perry. Defendant was present with his counsel, James M. Ayers, II. This case is presently scheduled for arraignment and trial before the undersigned during the September 3, 2013 term of court.

Based on the evidence produced during the August 1, 2013 suppression hearing, the court renders the following:

**FINDINGS OF FACT**

Shortly before 1:59 p.m. on January 13, 2011, Detective Ken Adams with the Farmville Police Department received a phone call from a confidential informant ("CI"). The CI advised Detective Adams that Defendant was driving a white Lincoln Town Car and was a convicted felon in possession of a firearm. The CI further advised Detective Adams that Defendant could be located at a residence on Thorne Street in Farmville, North Carolina.

According to Detective Adams, he had a working relationship with the CI and believed the CI to be reliable at that time he received the information. In fact, at the time, the CI had made

at least five controlled purchases which led to federal indictments. Further, Detective Adams testified he had never known the CI to provide false information. Detective Adams paid the CI $100 for the information he provided in the instant case.

In response to the call from the CI, Detective Adams, Chief Donnie Greene and Lieutenant Paul McLawhorn got into a marked police car and went to Thorne Street. Detective Adams saw a white Lincoln Town Car with tags which came back as registered to Defendant. Originally, Detective Adams did not see anyone in the white Lincoln Town Car. However, when they circled the block and came back to Thorne Street, Detective Adams noticed the white Lincoln Town Car was occupied and heading toward a stop sign at the intersection of Thorne Street and Williams Street. When the Lincoln Town Car got to the intersection, the driver, Defendant, did an illegal "three-point" turn[1] and turned the vehicle around.

Detective Adams, a passenger[2] in the patrol car, activated the blue lights. As soon as the blue lights were activated, Defendant allegedly dipped down in the vehicle so that his right shoulder disappeared. This action suggested to Detective Adams that Defendant was reaching for something or putting something under his seat.

After Defendant stopped, Detective Adams approached Defendant's vehicle on the driver's side. Detective Adams drew his weapon, but he allegedly had it pointed down at his right thigh and not pointed directly at Defendant. Detective Adams used Defendant's license to confirm that he had in fact pulled over the defendant, Ezekiel Gardner.

---

[1]It was uncontested during the suppression hearing that Defendant's turn violated N.C.G.S. § 20-154(a).

[2]Detective Adams testified that his report erroneously states that he was the driver. In fact, Chief Greene was the driver of the patrol car.

2

Detective Adams asked Defendant to step out of the vehicle. Detective Adams believed that Defendant was acting very nervous and noticed that Defendant kept looking at the floorboard of the Lincoln Town Car. Detective Adams asked Defendant whether he had any weapons on him, and Defendant answered in the negative. Detective Adams proceeded to pat down Defendant for weapons, and no weapons were found. Detective Adams then asked Defendant to go to the back of the Lincoln Town Car.

Detective Adams advised Defendant that he had received information that Defendant had a firearm in his possession. Detective Adams asked Defendant if he had anything illegal in the car, and Defendant hung his head and admitted he had a gun in the vehicle under the driver's side of the front seat. Lieutenant McLawhorn overheard the conversation between Detective Adams and Defendant and proceeded to recover the firearm, a Jennings 9mm, from underneath the driver's side of the front seat. Detective Adams asked Defendant if he was a convicted felon, and Defendant admitted he was "several times." Detective Adams then put Defendant in handcuffs.

At 3:57 p.m. on that same day, Defendant was advised of his *Miranda* rights at the police department. Defendant waived those rights in front of Detective Adams and Detective Edmonds by signing a written waiver form. Defendant proceeded to give a statement. Specifically, Defendant admitted that he bought the firearm at issue from "Cobe" for $200. Defendant further admitted that he had loaned the gun to "Pudgy," but he received the firearm back earlier that day.

## DISCUSSION

In his motion, Defendant argues that this court should suppress the January 13, 2011 search of his vehicle and his purported post arrest statements. Specifically, Defendant contends that his vehicle was illegally searched because there was no probable cause, safety issues, or

3

exigent circumstances which justified the search of his vehicle without a warrant. Defendant further contends that his post arrest statements should be suppressed, as they directly resulted from the illegal search.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search is *per se* unreasonable, "'subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception to the warrant requirement is for automobile searches. Pursuant to this exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). The Supreme Court has described probable cause as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

In this case, the undersigned finds that the January 13, 2011 search of Defendant's white Lincoln Town Car was based on probable cause. Specifically, Detective Adams had probable cause to believe that Defendant's vehicle contained contraband when Defendant admitted to Detective Adams that he was a convicted felon "several times" and had a firearm which he had placed underneath the driver's side of the front seat of the vehicle. These statements provided the probable cause necessary to search the vehicle for the firearm. Because the search was legal, it follows that Defendant's argument that his statements must be suppressed as the result of an illegal search lacks merit.

4

Case 4:11-cr-00065-F Document 36 Filed 08/06/13 Page 4 of 5

## SUMMARY

In summary, and for the foregoing reasons, Defendant's Motion to Suppress Search of Vehicle and Purported Statements [DE-29] is DENIED.

SO ORDERED.

This, the 6th day of August, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge